**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KIMON N. KARATH,                                    :
           Plaintiff,                        :
                                  :
v.                                                  :        3:07-cv-1073 (WWE)
                                    :
BOARD OF TRUSTEES OF                                :
TUNXIS COMMUNITY COLLEGE,                           :
           Defendant.                        :

**MEMORANDUM OF DECISION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

     This action arises from plaintiff Kimon N. Karath's claims that defendant Board of Trustees of Tunxis Community College failed to promote him, subjected him to a hostile work environment and retaliated against him for opposing gender discrimination at Tunxis Community College ("Tunxis").  Plaintiff alleges that defendant's conduct violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII").  Now pending before the Court is defendant's Motion for Summary Judgment (Doc. #44).  For the following reasons, defendant's motion will be granted.

     The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

     The parties have submitted briefs, a statement of facts and supporting exhibits, which reflect the following factual background.[1]

---

     [1]   Plaintiff's response to defendant's motion consisted of a brief in opposition as well as exhibits that failed to set forth any facts in an organized fashion for the Court to consider; plaintiff did not include a counter-statement of facts as required by Local Rule of Civil Procedure 56(a)(1).  Therefore, the Court will accept the material facts asserted in defendant's statement of facts and supported by evidence as admitted by plaintiff.

1

Plaintiff Karath began working as a registrar at Tunxis Community College on July 19, 1977.  In July 1989, plaintiff was reassigned to the position of Director of Institutional Research and Planning.  In January 1995, plaintiff was reclassified as an Assistant Professor of English and served in that capacity until his retirement from Tunxis in February 2009.  Tunxis is governed by defendant Board of Trustees.  Since August 1993, Dr. Cathryn Addy has been President of Tunxis.

At all times during his employment, plaintiff was subject to the collective bargaining agreement between the Board of Trustees and the Congress of Connecticut Community Colleges ("CBA").  Pursuant to Article XII, Section 3 of the CBA, there is no right to a promotion even when an employee meets the minimal formal requirements.  The final decision on promotions rests with the President.

The procedures for promotion are laid out in the CBA.  The first step is for the President, no later than October 1, to publish a list of individuals who are eligible for promotion.  Next, the eligible individuals must apply for a promotion by January 5.  The promotion committee then selects the individuals that it recommends for promotion.  The President then makes the promotion.

Plaintiff challenges his failure to be promoted.  In the 2005-06 cycle, which is addressed by defendant's motion, Dr. Addy, as President, published a list of eligible individuals on October 1, 2005 and a revised list on December 7, 2005.  Plaintiff was included on both lists.  Plaintiff did not submit an application for promotion to Dr. Addy and thus was ineligible to be promoted under the CBA.  At his deposition, he testified regarding his failure: "I thought that that whole process was futile."

According to Dr. Addy, of the eight male faculty members on the revised list, only

2

plaintiff did not apply for a promotion.  Of the remaining seven who applied, six received promotions.  The Promotion Committee for 2005-06 consisted of four men and six women.  The members were elected by the bargaining unit pursuant to the CBA.

Plaintiff was eligible for promotion as part of the 2002-03, 2003-04 and 2004-05 promotion processes but did not apply.  The last time he applied for a promotion to Associate Professor was during the 2001-02 promotion process.

Plaintiff has exhausted all relevant administrative remedies prior to filing the instant suit by filing complaints with the CHRO and EEOC in October 2006.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence

3

of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Plaintiff claims that he was (1) discriminated against in being passed over for a promotion; (2) subjected to a hostile work environment; and (3) retaliated against for undertaking activities protected by Title VII.  The Court will address each of these claims in turn.

## I.      Title VII Discrimination

Title VII prohibits an employer from treating an individual less favorably on account of his gender, race, color or national origin.  42 U.S.C. § 2000e-2; Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004).  Where there is no direct evidence of discrimination, a Title VII claim is analyzed under the shifting burdens described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).  Plaintiff must first establish a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).  Defendant must then articulate a legitimate, non-discriminatory reason for taking the actions that establish the prima facie case.

4

The reason provided must be both "clear and specific." Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985). If defendant satisfies this requirement, plaintiff must show that defendant's proffered reason is a pretext for discrimination. Plaintiff is not required to prove that the prohibited motivation was the sole or even the principal factor in the decision, or that the employer's proffered reasons played no role in the employment decision, but only that those were not the only reasons and that plaintiff's protected status contributed to the employer's decision. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 78 (2d Cir. 2001). At all times, plaintiff bears the burden of persuading the trier of fact that defendant intentionally discriminated against him. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

To show that his failure to be promoted violated Title VII, plaintiff must demonstrate that (1) he is a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants: (3) he was rejected for the position; and (4) the position remained open and the employer continued to seek applicants. Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004). Plaintiff must offer proof that he was rejected under circumstances which give rise to an inference of unlawful discrimination. Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998).

If plaintiff establishes a prima facie case, the burden of production turns to defendant to establish a legitimate, non-discriminatory reason for failing to promote him. Plaintiff must then prove by a preponderance of the evidence that the supposed-legitimate reason is actually a pretext for discrimination. St. Mary's Honor Ctr., 509 U.S. at 515.

Plaintiff's amended complaint asserts that plaintiff was denied a promotion at all

5

relevant times, while defendant's motion is focused on the 2005-06 process.  The Court will address only those promotions occurring between the commencement of the three-year statute of limitations period on plaintiff's claims under Title VII and the filing of the amended complaint.  In each of those years, the undisputed evidence shows, and plaintiff does not dispute, that he did not apply for a promotion in the relevant processes.  Therefore, he cannot show a prima facie case of discriminatory failure to promote, and summary judgment is appropriate.

Through his affidavits, plaintiff attempts to show that other male employees were promoted even when they did not apply.  The Court, however, refuses to accept this evidence for several reasons.  First, plaintiff does not clarify on what basis he has personal knowledge of this fact, or the other facts he asserts.  Second, the evidence is entirely unclear to the Court because it appears to be offered through a document created by plaintiff based on information taken from other documents, and the Court will not dig through plaintiff's ramblings to determine what evidence supports his contentions.  Nor are plaintiff's summaries of other documents appropriate for the Court's review on summary judgment.  See Aerotrade, Inc. v. Republic of Haiti, 376 F. Supp. 1281, 1285 n.12 (S.D.N.Y. 1974).  Third, plaintiff's comparators were promoted in the 2007-08 process, after plaintiff filed his amended complaint.  The Court will not permit plaintiff to amend his complaint by implication in response to summary judgment. See Auguste v. Dep't of Corr., 424 F. Supp. 2d 363, 368 (D. Conn. 2006) (holding that plaintiff cannot amend complaint in response to motion for summary judgment). Therefore, a reasonable jury could not find that plaintiff's failure to be promoted was discriminatory.

II.    **Hostile Work Environment Claim**

Plaintiff alleges in count two that he was subjected to a hostile work environment because of his gender.  A hostile work environment exists in violation of Title VII where the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  To prevail on a hostile work environment claim, plaintiff must show both (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive so as to alter the conditions of his employment and (2) that a specific basis exists for imputing to the employer the conduct that created the hostile environment.  Briones v. Runyon, 101 F.3d 287, 291 (2d Cir. 1996).  Relevant factors include: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or merely an offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance.  Harris, 510 U.S. at 23.

"The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that [he] personally considered the environment hostile, and that the environment rose to some objective level of hostility."  Leibovitz v. New York City Transit Authority, 252 F.3d 179, 188 (2d Cir. 2001).  Isolated remarks or occasional episodes of harassment will not merit relief under Title VII; the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.  Garvin v. Potter, 367 F. Supp. 2d 548, 568 (S.D.N.Y. 2005); see also Payami v. City of New York, 2007 U.S. Dist. LEXIS 25851

7

(S.D.N.Y. Mar. 28, 2007) (granting defendants' motion for summary judgment because plaintiff's claims of race-based harassment did not rise to the level of a hostile work environment where he merely alleged "hostile and insulting remarks based upon his race").

A plaintiff claiming gender-motivated hostility under Title VII must demonstrate that the conduct took place because of his gender.  See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (holding that it is "axiomatic" that plaintiff's claim of a hostile work environment based on her sex must show conduct took place because of her sex).

Defendant argues that plaintiff's hostile work environment claim is not properly before the Court because it was not included in plaintiff's complaints to the CHRO or EEOC.  Plaintiff did not respond to this argument, stating "Defendant has not really addressed these issues in seeking Summary Judgment so ... these issues are not addressed."  Because defendant addressed plaintiff's hostile work environment claim and plaintiff failed to respond, the Court will grant summary judgment based on defendant's contention.  The Court is hesitant to grant summary judgment on this basis because the EEOC complaint should be read to put defendant on notice of all claims arising out of the same set of facts as those included in the complaint.  See Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1992), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998); Magnello v. TJX Cos., 556 F. Supp. 2d 114, 120 (D. Conn. 2008).  However, absent an argument from plaintiff, it is appropriate in this case.

Even if the Court were to find that plaintiff's hostile work environment claim was sufficiently related to the claims properly before the Court now, summary judgment

8

would still be appropriate because plaintiff offers absolutely no evidence to show that he was subjected to a hostile work environment.

**III.    Retaliation Claim**

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter...."  42 U.S.C. § 2000e-3(a).  A Title VII prima facie case of retaliation requires plaintiff to show: (1) that he engaged in protected activity; (2) that the employer was aware of the activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action.  Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004).  Once plaintiff has established a prima facie case, the burden-shifting paradigm of McDonnell-Douglas applies.

In the context of a retaliation claim, an employment action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Rail Co. v. White, 548 U.S. 53, 68 (2006). As the Court in Burlington explained, a court considering material adversity should separate significant from trivial harms.  The Court of Appeals has instructed that oral and written warnings do not generally amount to materially adverse conduct.  Chang v. Safe Horizons, 254 Fed. Appx. 838, 839 (2d Cir. 2007).  The application of the employer's disciplinary policies does not, without more, constitute an adverse employment action.  Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006).

The causal connection between a protected activity and an adverse employment action may be established by direct evidence or by showing the protected activity was

9

closely followed in time by the adverse action.  <u>Lovejoy-Wilson v. NOCO Motor Fuel,</u> <u>Inc.</u>, 263 F.3d 208, 224 (2d Cir. 2001). Generally, courts have found that a time period of one year between the protected activity and the alleged retaliatory act is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action.  <u>See Chang</u>, 254 Fed. Appx. at 840 (no causal nexus based on temporal proximity where alleged retaliation occurred almost one year following protected activity); <u>Deravin v. Kerik</u>, 2007 U.S. Dist. LEXIS 24696, *39-40 (S.D.N.Y. Apr. 2, 2007) (collecting cases).  Additionally, a plaintiff cannot rely on temporal proximity where "gradual adverse job actions" commenced prior to the protected activity.  <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 85 (2d Cir. 2001).

Defendant argues that plaintiff's retaliation complaint based on his undertaking of activities protected by Title VII is barred by the fact that it was not included in his complaint to the EEOC.  Plaintiff has not replied to this argument and, instead, maintains that defendant "has not really addressed" this issue.  Because defendant raised an argument to which plaintiff failed to respond, the Court will grant summary judgment on this claim because the relevant administrative remedies have not been exhausted.

Even if the Court were to review the retaliation claim on its merits, summary judgment would still be appropriate.  Plaintiff has failed to offer any evidence upon which a reasonable jury could rely that he participated in an activity protected by Title VII.  The only protected conduct discussed in this case is plaintiff's filing of complaints

with the CHRO and the EEOC, and plaintiff's failed promotions occurred before he filed those complaints.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment (Doc. #44) is GRANTED.  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 10th day of December, 2009.


_____/s/_____
Warren W. Eginton
Senior United States District Judge